**So Ordered.**



Frederick P. Corbit
Bankruptcy Judge

Dated: March 6th, 2014

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>JAMES PARKS CONANT,<br><br>Debtor. | Case No. 11-05664-FPC7 |
| ESTATE OF TROY THORPE<br>BRUCE BOYDEN, TRUSTEE,<br><br>Plaintiffs,<br><br>vs.<br><br>JAMES PARKS CONANT,<br><br>Defendant. | Adversary No. 13-80010-FPC<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

THIS MATTER came before the court pursuant to the timely filed complaint of the Chapter 7 Trustee, Bruce Boyden, in which he alleged that the discharge of defendant James Parks Conant should be revoked pursuant to 11 U.S.C. § 727(d)(1) and (2). The trial in this adversary proceeding was held on March 5, 2014. The court has considered the testimony, the exhibits admitted at trial, the legal authority cited by the parties, and the arguments of counsel. Based on the foregoing, the court enters the following findings of fact and conclusions of law:

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ Page 1

# FINDINGS OF FACT

1. James P. Conant and Troy C. Thorpe are a married couple and together purchased an embroidery business in February of 2007.

2. The embroidery business owned by Mr. Conant and Mr. Thorpe was known as Monogram Plus.

3. The Monogram Plus business assets, including all of its equipment, were pledged as collateral for a business loan made by UPS Capital Business Credit ("UPS").

4. Monogram Plus suffered financial problems and UPS foreclosed on its collateral on or about March 8, 2011.

5. On March 30, 2011, UPS sold equipment that was used in the operation of Monogram Plus for $5,000. The $5,000 paid to UPS came from Mr. Conant and Mr. Thorpe, but the Bill of Sale issued by UPS identifies Ms. Julie Clock as the buyer.

6. Ms. Clock was an employee of Monogram Plus from prior to the purchase of the business by Mr. Conant and Mr. Thorpe and she continued as an employee of the business until the business terminated its operations.

7. Although the Bill of Sale named Ms. Clock as the buyer, Ms. Clock testified at trial that the money used to buy the equipment was not hers and that she

never believed that the equipment belonged to her. Ms. Clock was a credible witness.

    8.    Equipment used by Monogram Plus, including equipment listed in the Bill of Sale, was moved to the residence of Mr. Conant and Mr. Thorpe in Veradale, Washington, at or near when the Bill of Sale was issued.

    9.    While the equipment from Monogram Plus was at the residence of Mr. Conant and Mr. Thorpe, they used the equipment and treated it as if it was their own.

    10.    On November 22, 2011, Mr. Conant filed a chapter 7 bankruptcy petition in case number 11-05664 and Mr. Thorpe filed a chapter 7 bankruptcy petition in case number 11-05659.

    11.    Bruce Boyden was appointed as the chapter 7 trustee in the bankruptcies of both Mr. Conant and Mr. Thorpe.

    12.    In each of their Statements of Financial Affairs, Mr. Conant and Mr. Thorpe stated that the equipment of Monogram Plus, held at their residence, was the property of Ms. Clock.

    13.    In order to administer the bankruptcy estates of Mr. Conant and Mr. Thorpe, Bruce Boyden, as the trustee, justifiably relied on the Statements of Financial Affairs that Mr. Conant and Mr. Thorpe signed under oath.

14. In January of 2012, Mr. Conant and Mr. Thorpe received $7,000 from an entity or individual identified as "Kimmel" for some of the equipment that was purchased from UPS. Mr. Boyden did not learn of this transaction until after February 29, 2012.

15. At the direction of Mr. Thorpe, in approximately March of 2012, Ms. Clock signed a document that purportedly transferred to Mr. Conant and Mr. Thorpe equipment listed in the Bill of Sale from UPS. Ms. Clock was provided no consideration for the alleged transfer and she did not understand the purpose of the document. Ms. Clock testified that she signed the document because she was asked to do so by Mr. Thorpe and because she liked Mr. Conant and Mr. Thorpe. Ms. Clock testified that Mr. Conant and Mr. Thorpe were wonderful employers.

16. At trial, Mr. Thorpe provided conflicting testimony about when Ms. Clock signed the document that purportedly transferred property to Mr. Conant and Mr. Thorpe.

17. Mr. Conant and Mr. Thorpe received their bankruptcy discharges on February 29, 2012.

18. In April of 2012, Mr. Conant and Mr. Thorpe sold more of the equipment Ms. Clock purportedly purchased from UPS. This sale was made to an entity or individual identified as "Beacon." The sale price was $35,000 and the proceeds from the sale went to Mr. Conant and Mr. Thorpe.

19. After the discharges of Mr. Conant and Mr. Thorpe, facts related to the assets used in the business of Monogram Plus were brought to Mr. Boyden's attention by an employee of an insurance company who was investigating an insurance claim made by Mr. Conant. Mr. Conant made a claim that a computer, which was formerly used by Monogram Plus, was stolen out of his automobile.

20. The newly discovered facts were inconsistent with the sworn statements made by Mr. Conant and Mr. Thorpe in their bankruptcies. Had the facts been truthfully presented during Mr. Conant's and Mr. Thorpe's bankruptcies, Mr. Boyden would have taken different actions in administrating the bankruptcy estates.

21. At the time of signing their Statements of Financial Affairs, Mr. Conant and Mr. Thorpe knew that they had some sort of ownership interest in assets that they stated were owned by Ms. Clock. Instead, they each intentionally made a false representation in their Statements of Financial Affairs that Ms. Clock was the sole owner of the assets formerly used in the business of Monogram Plus. Mr. Conant and Mr. Thorpe made the false representations with the intention that those representations would be relied upon by their bankruptcy trustee to the detriment of their creditors.

22. Had Mr. Conant and Mr. Thorpe been truthful in their Statements of Financial Affairs, Mr. Boyden, as the bankruptcy trustee, would have had the

13-80010-FPC    Doc 39    Filed 03/06/14    Entered 03/07/14 09:34:25    Pg 5 of 8

information needed to liquidate additional assets for the benefit of Mr. Conant's and Mr. Thorpe's creditors.

23. On February 13, 2013, less than one year after Mr. Conant and Mr. Thorpe received their bankruptcy discharges, Mr. Boyden as the duly appointed bankruptcy trustee timely initiated separate adversary actions against Mr. Conant and Mr. Thorpe. The two adversary actions were consolidated for the purpose of trial as they involved the same witnesses and similar issues.

24. In the adversary actions, Mr. Boyden alleged that the discharge of Mr. Conant and Mr. Thorpe should be revoked pursuant to 11 U.S.C. § 727(d)(1) and (2).

## **CONCLUSIONS OF LAW**

25. Washington courts recognize the "chief incidents of ownership of property as the right to possession, use and enjoyment, and to sell or otherwise dispose of it according to the will of the owner." *Wasser & Winters Co. v. Jefferson County*, 84 Wn.2d 597, 599 (1974) (citing *In re Estate of Eckert*, 14 Wn.2d. 497 (1942)).

26. In addition to identifying factors that indicate ownership, "another important consideration is the nature of the transaction by which these indicia of ownership are acquired." *Gingrich v. Unigard Security Insurance Co.*, 57 Wn. App. 424 (1990).

27. The trustee has demonstrated that Mr. Conant and Mr. Thorpe exercised control over the assets purchased from UPS of the nature described by the *Wasser* court sufficient to confer an ownership interest.

28. The trustee has also demonstrated that the straw man transaction identifying Ms. Clock as the buyer was accomplished in furtherance of Mr. Conant's and Mr. Thorpe's ownership interests, that Ms. Clock's purported reconveyance of the property had no legal effect, and that these two transactions were undertaken to clothe Mr. Conant's and Mr. Thorpe's actions in legitimacy.

29. The trustee relies on 11 U.S.C. §727(d) to supply the grounds for revocation of Mr. Conant's and Mr. Thorpe's discharges. The relevant paragraphs provide:

> (d) On request of a trustee, a creditor, or the United States trustee … the court shall revoke a discharge granted under subsection (a) of this section if –
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
> (2) the debtor acquired property … of the estate, or became entitled to acquire property … of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;
> …

30. "The fraud which must be shown is fraud 'in fact,' such as the intentional omission of assets from the schedules, and must involve intentional

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ Page 7
13-80010-FPC    Doc 39    Filed 03/06/14    Entered 03/07/14 09:34:25    Pg 7 of 8

wrong." *Pelletier v. Donald (In re Donald)*, 240 B.R. 141, 145 (B.A.P. 9th Cir. 1999) (quoting Collier on Bankruptcy P727.15[2] (15th ec. Rev. 1999)). "Fraudulent intent may be established by showing that the debtor knowingly made an omission that misleads the trustee or that the debtor engaged in a fraudulent course of conduct." *Fokkena v. Klages*, 381 B.R. 550,554 (B.A.P. 8th Cir. 2008) (quoting *Miller v. Kasden (In re Kasden)*, 209 B.R. 239, 244 (B.A.P. 8th Cir. 1997)).

31. The trustee has demonstrated that Mr. Conant and Mr. Thorpe knowingly made omissions and misstatements intended to misrepresent their interest in the assets and mislead the trustee and that such representations reasonably delayed the trustee's discovery of the inaccuracies until after Mr. Conant and Mr. Thorpe received their discharges.

32. Pursuant to 11 U.S.C. §727(d)(1), the discharges of Mr. Conant and Mr. Thorpe should be revoked.

33. As the court will revoke the discharges of Mr. Conant and Mr. Thorpe pursuant to 11 U.S.C. § 727(d)(1), the court need not reach the merits of the trustee's arguments under 11 U.S.C. § 727(d)(2).

///END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW///